# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### NORTHERN DIVISION

| | | |
|---|---|---|
| Deysi Arriaza, | ) | |
| | ) | Case No.: 1:20-cv-03073-JKB |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Experian Information Solutions, Inc., | ) | |
| Toyota Motor Credit Corporation | ) | |
| | ) | |
| Defendant(s) | ) | |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS UNDER RULES 12(b)(6) AND 12(b)(1)

**MERIDIAN LAW, LLC**

*/s/ Aryeh E. Stein*
Aryeh E. Stein, Fed. Bar 24559
600 Reisterstown Road
Suite 700
Baltimore, MD 21208
Phone: 443-326-6011
Fax: 410-653-9061
astein@meridianlawfirm.com

## <u>TABLE OF CONTENTS</u>

Table of Authorities …………………………………………………………… iii

I.  Introduction ………………………………………………………………… 1

II.  Procedural Background …………………………………………………….. 2

III.  Factual Background ………………………………………………………… 2

IV.  Standard of Review ………………………………………………………… 3

    A.  MOTION TO DISMISS UNDER RULE 12(B)(1) ………………… 3

    B.  MOTION TO DISMISS UNDER RULE 12(b)(6) ………………… 3

V.  Legal Argument ……………………………………………....................... 4

    A.  REPORTING A PAST-DUE BALANCE ON A
    CHARGED-OFF ACCOUNT IS INACCURATE ..………………… 4

        i.  Plaintiff's Allegations Regarding the Disparity in Reporting
        Treatment Between the Past-Due and Overall Balance
        Establish an Inaccuracy under the FCRA …………………… 5

        ii.  Plaintiff's Allegations Regarding the Metro 2 Guidelines
        Establish an Inaccuracy under the FCRA …………………… 7

    B.  DEFENDANTS' HARMFUL CREDIT REPORTING GIVES
    PLAINTIFF ARTICLE III STANDING …………………………. 10

        i.  Plaintiff's Allegations of Inaccuracy Are Substantive
        Violations of the FCRA, and Therefore Confer Article III
        Standing Without the Need to Allege Any Additional Harm ... 12

        ii.  Plaintiff's Alleged Harm Regarding a Lower Past Due
        Balance Creates a Risk of Harm to Plaintiff's Credit Because
        Only the Past-Due Balance Will Be Reported as a Declining
        Balance, Which Is Enough to Satisfy Article III Standing
        Requirements …………………………………………………… 19

        iii.  Plaintiff's Alleged Harm Regarding a Decreased Credit Score
        and Loss of Credit as a Result of the Violation of Metro 2
        Guidelines is Sufficient to Establish Article III Standing ……. 21

iv.  Plaintiff's Claim Should Not Be Dismissed on Ripeness
Grounds Because the Contours of Plaintiff's Claim Are
Sufficiently Defined under Article III ……………………….          24

VI.  CONCLUSION ……………………………………………………………          26

## Table of Authorities

### Supreme Court Opinions

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .................... 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................... 4

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) .................... 15, 18, 22

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .................... 3, 11, 12

### U.S. Constitution

Article III of the U.S. Constitution .................... 3

### Fourth Circuit Opinions

*Alston v. Branch Banking & Tr. Co.*,
    No. GJH-15-3100, 2016 U.S. Dist. LEXIS 115074 (D. Md. Aug. 26, 2016) .................... 6

*Alston v. Equifax Info. Servs., LLC*,
    Civil Action No. TDC-13-1230, 2016 U.S. Dist. LEXIS 129424
    (D. Md. Sep. 20, 2016) .................... 4

*Deal v. Mercer Cty. Bd. of Educ.*,
    911 F.3d 183 (4th Cir. 2018) .................... 25, 26, 27

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) .................... 3

*Ben-Davies v. Blibaum & Assocs., P.A.*,
    695 F. App'x 674 (4th Cir. 2017) .................... 23

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
    777 F.3d 712 (4th Cir. 2015) .................... 16-17

*Brown v. Experian Credit Reporting*,
    No. 12-cv-2048-JKB, 2012 U.S. Dist. LEXIS 178519 (D. Md. Dec. 17, 2012) .................... 4-5

*Brown v. R&B Corp. of Va.*,
    267 F. Supp. 3d 691 (E.D. Va. 2017) .................... 15, 19

*Curtis v. Propel Prop. Tax Funding, LLC*,
    915 F.3d 234 (4th Cir. 2019) .................... 12-13, 13

*Frazier v. First Advantage Background Servs. Corp.*,
    Civil Action No. 3:17cv30, 2019 U.S. Dist. LEXIS 163220
    (E.D. Va. Sep. 23, 2019) .................... 14

*Garvey v. Seterus, Inc.*,
   No. 5:16-cv-00209-RLV, 2017 U.S. Dist. LEXIS 97373
   (W.D.N.C. June 23, 2017) .............................................................................................. 4

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008) ......................................................................................... 4

*Green v. RentGrow, Inc.*,
   No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 (E.D. Va. Nov. 10, 2016) ....................... 23

*Jones v. Equifax, Inc.*,
   Civil Action No. 3:14cv678, 2015 U.S. Dist. LEXIS 114106
   (E.D. Va. Aug. 27, 2015) ............................................................................................... 5

*Miller v. Dish Network, L.L.C.*,
   326 F. Supp. 3d 51 (E.D. Va. 2018) ............................................................................... 16

*Pak v. Unifund CCR Partners*,
   No. 7:13-CV-70-BR, 2014 U.S. Dist. LEXIS 7662 (E.D.N.C. Jan. 22, 2014) ................... 26

*Saunders v. Branch Banking and Trust Co. of VA*,
   526 F.3d 142 (4th Cir. 2008) ......................................................................................... 5

*Sipe v. Equifax Info. Servs., LLC*,
   No. 3:16-6103, 2017 U.S. Dist. LEXIS 7938 (S.D. W. Va. Jan. 20, 2017) ....................... 24

*Taylor v. Timepayment Corp.*,
   Civil Action No. 3:18cv378, 2019 U.S. Dist. LEXIS 55680
   (E.D. Va. Mar. 31, 2019) ............................................................................................... 13

*Thomas v. FTS USA, LLC*,
   193 F. Supp. 3d 623 (E.D. Va. 2016) .................................................................. 13, 18, 22

**Federal Court Opinions**

*Anderson v. Experian Info. Sols., Inc.*,
   No. 16-cv-03328-BLF, 2017 U.S. Dist. LEXIS 33366 (N.D. Cal. Mar. 8, 2017) ........... 9-10

*Artemov v. TransUnion, LLC*,
   No. 20-cv-1892 (BMC), 2020 U.S. Dist. LEXIS 159267
   (E.D.N.Y. Sep. 1, 2020) ...................................................................................... 1, 17, 24

*Carlisle v. Nat'l Commer. Servs.*,
   No. 1:14-CV-515-TWT-LTW, 2017 U.S. Dist. LEXIS 39954
   (N.D. Ga. Feb. 22, 2017) ............................................................................................... 6

*Cohen v. Rosicki, Rosicki & Associates, P.C.*,
   897 F.3d 75 (2d Cir. 2018) ..................................................................................... 16, 17

*Conrad v. Experian Info. Sols., Inc.*,
   No. 16-cv-04660 NC, 2017 U.S. Dist. LEXIS 68641 (N.D. Cal. May 4, 2017) ......... 9, 10, 22

*Cristobal v. Equifax, Inc.*,
   No. 16-cv-06329-JST, 2017 U.S. Dist. LEXIS 63571 (N.D. Cal. Apr. 26, 2017) ....... 8, 9, 10, 24

*Crupar-Weinmann v. Paris Baguette Am., Inc.*,
  861 F.3d 76 (2d Cir. 2017) ......................................................................... 17-18, 18

*Doster v. Experian Info. Sols., Inc.*,
  No. 16-CV-04629-LHK, 2017 U.S. Dist. LEXIS 8412 (N.D. Cal. Jan. 20, 2017) ............................ 10

*Jugoz v. Experian Info. Sols., Inc.*,
  No. 16-cv-05687-MMC, 2017 U.S. Dist. LEXIS 97656
  (N.D. Cal. June 23, 2017) ......................................................................... 19-20

*Lee v. Verizon Communs., Inc.*,
  837 F.3d 523 (5th Cir. 2016) ......................................................................... 12

*Lenox v. Equifax Info. Servs. LLC*,
  No. 05-1501-AA, 2007 U.S. Dist. LEXIS 34453 (D. Or. May 7, 2007) ............................................ 6

*Mamisay v. Experian Info. Sols., Inc.*,
  No. 16-cv-05684-YGR, 2017 U.S. Dist. LEXIS 40793 (N.D. Cal. Mar. 21, 2017) ..................... 22, 23

*Muransky v. Godiva Chocolatier, Inc.*,
  979 F.3d 917 (11th Cir. 2020) ......................................................................... 15

*Nissou-Rabban v. Capital One Bank (USA), N.A.*,
  No. 15cv1675 JLS (DHB), 2016 U.S. Dist. LEXIS 81373 (S.D. Cal. June 6, 2016) ......................... 8

*Pedro v. Equifax, Inc.*,
  868 F.3d 1275 (11th Cir. 2017) ......................................................................... 5, 15, 19

*Ramirez v. TransUnion LLC*,
  951 F.3d 1008 (9th Cir. 2020) ......................................................................... 21, 23

*Rosen v. Verizon Pa., LLC*,
  No. 13-1722, 2014 U.S. Dist. LEXIS 40750 (E.D. Pa. Mar. 27, 2014) ............................................ 6

*Saenz v. Trans Union, LLC*,
  621 F. Supp. 2d 1074 (D. Or. 2007) ......................................................................... 6

*Santangelo v. Comcast Corp.*,
  162 F. Supp. 3d 691 (N.D. Ill. 2016) ......................................................................... 23-24

*Schroeder v. Bank of Am., LLC*,
  No. CV 12-132-M-DLC-JCL, 2013 U.S. Dist. LEXIS 64546 (D. Mont. Mar. 4, 2013) ..................... 6

*Trichell v. Midland Credit Mgmt.*,
  964 F.3d 990 (11th Cir. 2020) ......................................................................... 15-16, 16

## United States Code

15 U.S.C. § 1681e ......................................................................... 14

15 U.S.C. § 1681i ......................................................................... 4, 14, 15, 18

15 U.S.C. § 1692e ......................................................................... 26

15 U.S.C. §§ 1681 ......................................................................... 2, 3

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................... 1, 3, 4

## I.      **INTRODUCTION**

Defendants Experian Information Solutions, Inc. ("Experian") files a motion to dismiss under Rules 12(b)(6) and 12(b)(1), arguing that Plaintiff has failed to state a claim for relief because she has failed to establish an inaccuracy under the Fair Credit Reporting Act ("FCRA"), and does not have Article III standing because she has failed to establish an injury-in-fact. Defendant focuses on out-of-circuit caselaw in its Rule 12(b)(6) challenge.  Contrary to those cases, however, Plaintiff does not allege that reporting a past-due balance on a charged-off account is inaccurate *per se*, but that reporting a lower past-due balance triggers Toyota's internal policies whereby only the total balance is paid down as payments are made on the account, leaving the past-due balance remaining.  This makes it appear as though the past-due balance has not been paid when in fact it has.  Continuing to report a past-due balance on an account that has a significantly lower outstanding balance is therefore inaccurate, in violation of the FCRA.  Moreover, the reporting of a lower total balance, in violation of the Metro 2 Guidelines, is inconsistent with industry standards, which are used as a precise guide by the algorithms that calculate a debtor's credit score.  Any deviation from that guide will, as here, lead to a decreased credit score because the algorithms do not have any cohesive way of dealing with information outside the expected parameters under the guidelines.

For the same reasons, Plaintiff has established Article III standing.  contrary to the arguments in *Artemov v. TransUnion, LLC*, No. 20-cv-1892 (BMC), 2020 U.S. Dist. LEXIS 159267 (E.D.N.Y. Sep. 1, 2020) and other similar cases on which Defendant heavily relies, the harm is here not the appearance of a lower past-due balance, but rather an outstanding balance which is being reported as though no payments had ever been made on the account, as the debt is steadily paid down.  This is certainly harm enough to establish Article III standing.  Likewise, a

loss of credit is enough to establish an injury-in-fact, as is emotional distress.  These are almost universally recognized bases for Article III standing, and Defendant can offer no support otherwise.

## II.   PROCEDURAL BACKGROUND

Plaintiff filed this Complaint on October 22, 2020, alleging violations of 15 U.S.C. §§ 1681 *et seq.*, of the FCRA.  Dkt. # 1.  On November 13, 2020, Defendants Experian and Toyota filed unopposed motions for an extension of time to file a response, which were granted by the Court.  *See* Dkt. Nos. 7, 8, 10.  Toyota filed a subsequent motion to extend the time to file a responsive pleading on December 3, 2020, which was granted by the Court.  *See* Dkt. Nos. 12, 13.  Experian filed a motion to dismiss on December 14, 2020.  Dkt. # 14.  On December 30, 2020, Toyota filed a third motion for an extension of time to file a responsive pleading, which was granted by the Court.  Dkt. Nos. 17, 18.

## III.   FACTUAL BACKGROUND

Defendant Toyota Motor Credit Corporation ("Toyota") reported false and inaccurate information to Experian related to Plaintiff's Toyota account (the "Account").  *See* Dkt. # 1, ¶ 12.  The information was inaccurate because reporting a lower past due balance on a charged-off account violates the Metro 2 Guidelines such that it is contrary to industry expectations and results in a decreased credit score, *see Id.* at ¶¶ 13, 14, 28, 33, 40, 52, 66, and also because leads to a situation where only the total balance is paid down as payments are made on the account, making it appear as though Plaintiff still has the same past-due balance due and owing, *see Id.* at ¶ 15.  Experian prepared a credit report containing this inaccuracy, specifically showing a balance of $10,068 with a past-due balance of $7035.  *See Id.* at ¶ 14.  Plaintiff sent dispute letters to Experian on or about February 24, 2020.  *Id.* at ¶ 17.  Experian notified Toyota, which

did not conduct a reasonable investigation and continued to report the inaccurate information to Experian.  *Id.* at ¶¶ 18, 19.  Experian failed to consider any of the information provided by Plaintiff, and failed to conduct a reasonable reinvestigation into Plaintiff's dispute.  *Id.* at ¶¶ 23, 24, 25.  Defendant Toyota continues to furnish this inaccurate information and Experian continue to issue these reports to third parties.  *Id.* at ¶ 27.  As a result, Plaintiff suffered loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on future credit applications, as well as the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.  *Id.* at ¶¶ 28, 33, 40, 52, 66.

## IV.   STANDARD OF REVIEW

### A.   MOTION TO DISMISS UNDER RULE 12(b)(1)

Article III of the U.S. Constitution limits the federal courts to "cases or controversies." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017)(citations omitted).  This is a jurisdictional requirement that must be met before a federal court has the power to hear a case.  *Beck*, 848 F.3d at 269.  The "irreducible minimum requirements" for Article III standing are that plaintiff have suffered an (1) injury-in-fact (2) that is fairly traceable to the wrongful actions of the defendant, and (3) that is redressable by the courts.  848 F.3d at 269.  To establish an injury-in-fact, a plaintiff must show he "suffered "an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)(quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992)).

### B.   MOTION TO DISMISS UNDER RULE 12(b)(6)

Rule 12(b)(6) provides for dismissal of the complaint if the plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  While a complaint does not need

"detailed factual allegations," it must have more than "naked assertion[s]" and unadorned "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  In order to survive a motion to dismiss under Rule 12(b)(6), the factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plausibility standard "does not impose a probability requirement at the pleading stage," *see Twombly*, 550 U.S. at 556, but demands more than a "sheer possibility that a defendant has acted unlawfully," *see Iqbal*, 556 U.S. at 662.  "In evaluating a motion to dismiss, a court must construe the complaint's factual allegations 'in the light most favorable to the plaintiff' and 'must accept as true all well-pleaded allegations.'" *Garvey v. Seterus, Inc.*, No. 5:16-cv-00209-RLV, 2017 U.S. Dist. LEXIS 97373, at *15 (W.D.N.C. June 23, 2017)(quoting *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994)).  This does not apply to legal conclusions, nor to "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)(quotation marks omitted).

**V.    LEGAL ARGUMENT**

**A.  REPORTING A PAST-DUE BALANCE ON A CHARGED-OFF ACCOUNT IS INACCURATE**

In order to establish a *prima facie* case under §§ 1681i(a) and 1681e(b), a plaintiff must establish an inaccuracy in his credit report as a threshold matter.  *See Alston v. Equifax Info. Servs., LLC*, Civil Action No. TDC-13-1230, 2016 U.S. Dist. LEXIS 129424, at *31 (D. Md. Sep. 20, 2016)("[T]o succeed on claims under § 1681i(a), a plaintiff must make a threshold showing of inaccuracy."); *see also Brown v. Experian Credit Reporting*, No. 12-cv-2048-JKB, 2012 U.S. Dist. LEXIS 178519, at *7 (D. Md. Dec. 17, 2012)("In order to state a claim for failure to comply with § 1681e(b), Plaintiff must allege that a consumer report contained

inaccurate information.  The same is true of § 1681i(a).")(citing *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)).

"Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression."  *Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142, 148 (4th Cir. 2008).  Moreover, "when CRAs prepare consumer reports, they [must] 'follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.'" *Jones v. Equifax, Inc.*, Civil Action No. 3:14cv678, 2015 U.S. Dist. LEXIS 114106, at *12 (E.D. Va. Aug. 27, 2015)(quoting 15 U.S.C. § 1681e(b)); *see also Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1281 (11th Cir. 2017)("The definitions of 'maximum,' 'possible,' and 'accuracy' suggest that the information reported by a consumer reporting agency must be free from error to the greatest extent within the power of the consumer reporting agency … That is, in addition to being true, the information must not be misleading.").

Here, Plaintiff alleges a *prima facie* showing of inaccuracy in the reported past due balance on her credit report for two reasons.  First, reporting a lower past-due balance triggers internal reporting policies by Toyota whereby only the outstanding balance will be reported as a declining balance as payments are made on the Account, resulting in a past-due balance that is inaccurately reported as higher than it truly is.  Second, Plaintiff complains that the reporting of a lower past-due balance violates the Metro 2 Guidelines such that it lowers credit scores (and specifically here resulted in a loss of credit and credit denials) because it goes against industry expectations that are used as guideposts by the algorithms that are used to calculate credit scores.

### i.  Plaintiff's Allegations Regarding the Disparity in Reporting Treatment Between the Past-Due and Overall Balance Establish an Inaccuracy under the FCRA

Violating the FCRA by inaccurately reporting balances is a basic rule-of-thumb by the courts that has been tested time and again.  *See Lenox v. Equifax Info. Servs. LLC*, No. 05-1501-AA, 2007 U.S. Dist. LEXIS 34453, at \*29 (D. Or. May 7, 2007)(denying defendant's motion for summary judgment where the Plaintiff alleged the following: "In March 31, 2004, plaintiffs eventually resolved the dispute with Homeq by settling for an amount equating to approximately two years worth of payments. With this payment, the account was considered paid off. Plaintiffs contend that defendant continued to report a past due balance and delinquencies for their Homeq account for the months of September and October 2000."); *see also Rosen v. Verizon Pa., LLC*, No. 13-1722, 2014 U.S. Dist. LEXIS 40750, at \*17-\*18 (E.D. Pa. Mar. 27, 2014)(denying motion for summary judgment by the defendant furnisher in a dispute over the past-due balance owed based on whether charges and credits were applied correctly to the plaintiff's account); *see also Schroeder v. Bank of Am., LLC*, No. CV 12-132-M-DLC-JCL, 2013 U.S. Dist. LEXIS 64546, at \*7 (D. Mont. Mar. 4, 2013)(the court denying a motion for summary judgment where the plaintiff disputed the reporting of a past-due amount under an account that did not belong to her); *see also  Carlisle v. Nat'l Commer. Servs.*, No. 1:14-CV-515-TWT-LTW, 2017 U.S. Dist. LEXIS 39954, at \*26-\*30 (N.D. Ga. Feb. 22, 2017)(disputing an alleged debt with furnisher made out a plausible claim under the FCRA); *see also Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1078, 1084 (D. Or. 2007)(denying summary judgment on plaintiff's FCRA claim premised on a challenge to the reported debt because the credit reporting agency had been presented with evidence that it was paid off); *see also Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 U.S. Dist. LEXIS 115074, at \*32-\*34 (D. Md. Aug. 26, 2016)(granting leave to amend where plaintiff had disputed the reported balance of a mortgage).

And this is exactly what Plaintiff has done here.  Specifically, she has challenged the reporting of a lower past-due balance.  This is inaccurate because when a lower past due balance is reported on a charged-off account, Toyota, by its own internal policies, will only report a declining outstanding balance as payments are made on the Account, resulting in a disparity in the two balances.  Plaintiff will eventually be left with a higher past-due balance that makes it seem as though she owes more than she does.  This is not only technically inaccurate, but misleading under Eleventh Circuit precedent, and misleading on the critical issue of money actually owed by Plaintiff.

Defendant attempts to argue that the reporting is not inaccurate based on an attached credit report provided by Defendant Experian.  *See* Dkt. # 14-2.  Defendant then launches into a screed about the enforceability of the debt which has no application to the claims at issue here. That aside, the attached credit report fails to provide any illuminating insight into the supposed distinctions between the "overall balance" and the "written off balance," which, according to Defendant Experian, are meaningfully distinct in some fashion that Defendant never explains. Aside from the fact that this is simply declared by Defendant Experian without providing one iota of support, the distinction is a false one.  The "written off balance" *is* the "total" or "outstanding balance" for purposes of this claim.

### ii.  Plaintiff's Allegations Regarding the Metro 2 Guidelines Establish an Inaccuracy under the FCRA

Plaintiff's second theory of liability stems from the Metro 2 Guidelines.  Courts have recognized that reporting information in deviation from the Metro 2 Guidelines is an inaccuracy under the FCRA where the plaintiff "establish[es] through admissible evidence that this is in fact the industry standard, that [the defendant] deviated from it, and that this particular deviation might adversely affect credit decisions—in other words, that 'entit[ies] would have expected

7

Defendant to report in compliance with the CDIA guidelines.'" *Nissou-Rabban v. Capital One Bank (USA), N.A.*, No. 15cv1675 JLS (DHB), 2016 U.S. Dist. LEXIS 81373, at *15 (S.D. Cal. June 6, 2016)(quoting *Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 U.S. Dist. LEXIS 51877, at *33 (N.D. Cal. Apr. 10, 2013)).

In *Nissou-Rabban*, for example, the court found a plausible violation of the FCRA based on allegations that the defendant Synchrony Bank failed to report a code "D" or "no data" during the pendency of a bankruptcy petition, as the standard practice in the industry required.  *See* No. 15cv1675 JLS (DHB), 2016 U.S. Dist. LEXIS 81373, at *12, *15.  The court noted that the plaintiff was not exclusively relying on the Metro 2 guidelines as the source of the violation, but that "Synchrony's failure to adhere to the Metro 2 format may prompt those making credit decisions to draw a more negative inference from Synchrony's reporting a charge off than if it reported 'no data,' as Plaintiff alleges the industry standard required."  *Id.* at *15.

Likewise, in *Cristobal v. Equifax, Inc.*, No. 16-cv-06329-JST, 2017 U.S. Dist. LEXIS 63571 (N.D. Cal. Apr. 26, 2017), the court again found that failure to report the "D" code in violation of the Metro 2 made out a plausible violation of the FCRA on a motion to dismiss when the expectation was that those standards would be adhered to in the credit reporting industry. *Cristobal*, No. 16-cv-06329-JST, 2017 U.S. Dist. LEXIS 63571 at *14 ("This is particularly true if Metro 2 data reporting is standard industry practice.").  The court noted that this additional allegation distinguished those cases holding that deviation from the Metro 2 is not a *per se* violation of the FCRA.  No. 16-cv-06329-JST, 2017 U.S. Dist. LEXIS 63571 at *12 ("The Court acknowledges that other courts in this district have interpreted *Nissou-Raban* narrowly and then rejected FCRA claims premised on Metro 2 errors or omissions.")(citing cases).  Apropos here, the court noted

> Under Cristobal's theory, her credit report deviated from Metro 2 because the CII field was left blank when it should have been filled with code "D." ECF No. 1 ¶¶ 84, 137. That deviation "will prompt those making credit decisions to draw a more negative inference regarding [her] creditworthiness," id. ¶¶ 64-66, and could lower her credit score because FICO's "algorithms" are premised on compliant Metro 2 data, id. ¶¶ 47-49. ***In a world of big data, it is plausible that an algorithm designed to calculate Cristobal's FICO score based on the Metro 2 codes might not generate the same score just because the word "bankruptcy" appears elsewhere on the report.*** This is particularly true if Metro 2 data reporting is standard industry practice.

*Id.* at *13-14 (emphasis added).

The court in *Conrad v. Experian Info. Sols., Inc.*, No. 16-cv-04660 NC, 2017 U.S. Dist. LEXIS 68641 (N.D. Cal. May 4, 2017) likewise found a violation of the FRCA where the furnisher had refused to supply the code "D" in a pending bankruptcy petition, even considering the possibility that the bankruptcy had been noted elsewhere in the credit report.  *See Conrad*, No. 16-cv-04660 NC, 2017 U.S. Dist. LEXIS 68641 at *16-*17.  Following the lead of *Nissou-Rabban* and *Cristobal*, the court noted in particular,

> Even if the bankruptcy was mentioned elsewhere in the credit report, the Court does not know whether those people making credit decisions about Conrad were aware of his bankruptcy. ***The people making such decisions about Conrad may not have known of the bankruptcy because of the use of algorithms in calculating a consumer's credit score.*** Dkt. No. 15 at 6 ("When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards"). Thus, "[i]n a world of big data, it is plausible that an algorithm designed to calculate [plaintiff's] FICO score based on the Metro 2 codes might not generate the same score just because the word 'bankruptcy' appears elsewhere on the report." *Cristobal v. Equifax, Inc.*, No. 16-cv-06329 JST, 2017 U.S. Dist. LEXIS 63571, 2017 WL 1489274, at *5 (N.D. Cal. Apr. 26, 2017). It is therefore plausible that the failure to comply with industry standards was "misleading in such a way and to such an extent that it [could] be expected to adversely affect credit decisions." *Carvalho*, 629 F.3d at 890.

No. 16-cv-04660 NC, 2017 U.S. Dist. LEXIS 68641 at *17 (emphasis added).

These cases are distinguishable from the majority of cases that have found that Metro 2 violations are not *per se* violations of the FCRA.  *See e.g. Anderson v. Experian Info. Sols., Inc.*, No. 16-cv-03328-BLF, 2017 U.S. Dist. LEXIS 33366, at *15-*16 (N.D. Cal. Mar. 8,

2017)("[D]istrict courts within the Ninth Circuit overwhelmingly have held that a violation of industry standards is insufficient, *without more*, to state a claim for violation of the FCRA.")(emphasis added); *see also Doster v. Experian Info. Sols., Inc.*, No. 16-CV-04629-LHK, 2017 U.S. Dist. LEXIS 8412, at *14-*15 (N.D. Cal. Jan. 20, 2017)(collecting cases).

Here, the defining feature of Plaintiff's claim is not based exclusively on the fact that Toyota (and by extension, Experian) violated the Metro 2 Guidelines, but that failing to equalize the past due balance and overall balance on a charged off account, in violation of the Metro 2 Guidelines, upset an industry standard that is used as a strict guideline for the algorithms that are used by the industry to calculate credit scores. Failure to adhere to these guidelines has therefore resulted in a lower score, loss of credit and credit denials. "In a world of big data, it is plausible that an algorithm designed to calculate [Plaintiff's] FICO score based on the Metro 2 codes might not generate the same score" "because of the use of algorithms in calculating a consumer's credit score." *See Cristobal*, No. 16-cv-06329-JST, 2017 U.S. Dist. LEXIS 63571 at *14; *see also Conrad*, No. 16-cv-04660 NC, 2017 U.S. Dist. LEXIS 68641 at *17. An expert can be called to testify as to the deleterious effects that a failure to equalize the past due and listed balances has on Plaintiff's credit report.

Therefore, Plaintiff has established an inaccuracy based on the Metro 2 Guidelines violation, and Defendant's citation to a "majority" of cases rejecting such claims is distinguishable on the basis that, as noted above, they failed to take the Metro 2 Guidelines' violation any further. Here Plaintiff has, and as such a violation of the FCRA is made out.

## B. DEFENDANTS' HARMFUL CREDIT REPORTING GIVES PLAINTIFF ARTICLE III STANDING

Defendant takes issue with the injury-in-fact requirement under Article III. Specifically, Defendant argues that Plaintiff has failed to establish an injury-in-fact in the alleged reporting of

a lower past-due balance, for which, according to Defendant, Plaintiff could have suffered no appreciable harm.  Of course, this denies the very arguments above – first, that reporting a lower past-due balance triggers Toyota's internal reporting policy where only the total balance is reported as a declining balance as payments are made on the debt, leaving Plaintiff stuck with a *larger* past-due balance, and second, that violation of the Metro 2 Guidelines, which require creditors to equalize the past-due balance and total balance on a charged-off account, disrupts the algorithmic computations that generate credit scores, resulting not only in a lower credit score, but more specifically, a loss of credit and credit denials.  A lower credit score, loss of credit, and higher past-due balance indisputably establish injuries-in-fact.

Perhaps more importantly, however, Defendant's argument ignores the distinction between substantive and procedural violations drawn in the Fourth Circuit.  Since Plaintiff's allegation of inaccuracy goes to the very purposes of the Act, Plaintiff's violation is substantive and no further allegations of harm are necessary to establish Article III standing.  Separately, Plaintiff has also alleged emotional distress, loss of credit, and loss of the benefit of credit, all of which have been accepted by the courts as establishing an injury-in-fact under Article III.

As relevant here under Article III, not only must an injury be particularized to the plaintiff in the sense that he *individually* suffered it, but it must also be concrete.  *Spokeo*, 136 S. Ct. at 1548.  A concrete injury is a *de facto* injury.  136 S. Ct. at 1548.  That is, it actually exists; it is real and not abstract.  *Id.* at 1548.  "'Concrete' is not, however, necessarily synonymous with 'tangible.'"  *Id.* at 1549.  "[I]ntangible injuries can nevertheless be concrete," and determining whether an intangible injury rises to the level of an injury-in-fact sufficient to establish Article III standing, a court must look to the "history and judgment of Congress."  *Id.* (citations omitted).  That is, a court must determine "whether an alleged intangible harm has a close relationship to a

harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and then Congressional judgment "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* (citations omitted).

However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* A plaintiff must still establish an injury-in-fact in the context of statutory violations. "[B]are procedural violation[s], divorced from any concrete harm," do not satisfy Article III's injury-in-fact requirements. *Id.* "Thus, *Spokeo* recognizes that at minimum, a 'concrete' intangible injury based on a statutory violation must constitute a 'risk of real harm' to the plaintiff." *Lee v. Verizon Communs., Inc.*, 837 F.3d 523, 529 (5th Cir. 2016)(quoting *Spokeo*, 136 S. Ct. at 1549).

### i.  Plaintiff's Allegations of Inaccuracy Are Substantive Violations of the FCRA, and Therefore Confer Article III Standing Without the Need to Allege Any Additional Harm

Plaintiff's allegations of inaccurate reporting go to the very purposes of the FCRA and therefore constitute a substantive violation of the Act.  The violation at issue is the reporting of two separate balances on a charged-off account, an inaccuracy that goes to the very heart of the Act and the reasons for its creation.  On that basis alone, Plaintiff has established an injury-in-fact without the need to allege any *additional* harm.

The Fourth Circuit in particular has confirmed this approach, drawing a distinction between substantive and procedural violations, and allowing for substantive violations on their own to establish Article III standing without the need to allege any additional harm.  *See Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 241 (4th Cir. 2019)(finding that the plaintiff had Article III standing to bring claims under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA") because he alleged the violation of a substantive right under "to enter into

a credit agreement without being required to agree to preauthorized EFTs," and the violation of §§ 1693e, 1693l, both of which were "the type of harm Congress sought to prevent when it enacted" EFTA)(quoting *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337 (4th Cir. 2017)).  The defendant argued, like Defendant Experian does here, that some additional harm was required for standing under EFTA, but the court rejected that position.  *Curtis*, 915 F.3d at 241-42.  Instead, it recognized that "Congress enacted [the] EFTA to protect 'individual consumer rights' in the context of electronic fund transfers."  915 F.3d at 241 (quoting 15 U.S.C. § 1693(b)).  Among those rights were the right "to enter into a credit agreement without being required to agree to preauthorized EFTs" under § 1693k, which "is the same right that [the plaintiff] alleges that [the defendant] violated."  *Id.* at 241.

Critically here is the distinction between purely procedural violations, which may require additional allegations of harm outside the statutory violation at issue, and substantive violations which require no additional allegations of harm.  *See Taylor v. Timepayment Corp.*, Civil Action No. 3:18cv378, 2019 U.S. Dist. LEXIS 55680, at *14 (E.D. Va. Mar. 31, 2019)("Curtis lends support for Taylor's argument that, in certain circumstances, a statutory violation that reaches the very purpose of the statute may constitute a substantive violation rather than a procedural violation."); *see also Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 631-32 (E.D. Va. 2016)(noting that 15 U.S.C. § 1681b(b)(2) "establishes a right to privacy in one's consumer report" and that the protections provided "are clearly substantive, and neither technical nor procedural.").  Defendant's arguments essentially seek to overturn this established precedent by arguing that some additional harm is required.

Even those courts openly questioning the substantive and procedural rights distinction have only done so with the acknowledgment that the question ultimately boils to whether the

alleged statutory violation resulted in a harm that Congress sought to prevent. *See Frazier v. First Advantage Background Servs. Corp.*, Civil Action No. 3:17cv30, 2019 U.S. Dist. LEXIS 163220, at *27 & fn.19 (E.D. Va. Sep. 23, 2019)(while acknowledging in a footnote that "*Curtis* lends support for the proposition that a statutory violation that reaches the very purpose of the statute constitutes a substantive violation of a person's rights[,]" concluding that "[t]he underlying question is not whether a requirement is 'procedural' or 'substantive,' but whether violation of that requirement resulted in a harm that Congress sought to prevent."). As the Fourth Circuit frames it, a violation that causes a harm the statute was intended to prevent is considered a substantive violation that requires no additional allegations of harm.

Here, the alleged violations of §§ 1681i(a), 1681e(b) and § 1681s-2(b) resulted in the harms that the statute was designed to prevent – unquestionably, an allegation of inaccurate credit reporting. *See* 15 U.S.C. § 1681e(b)("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."); *see also* 15 U.S.C. § 1681i(a)(1)(A)(upon receiving a dispute from a consumer regarding the accuracy of reported information on her credit report, requiring a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…"); *see also* 15 U.S.C. § 1681s-2(b)(requiring furnishers to conduct an investigation into customer disputes regarding inaccuracies contained in a credit report, and to take certain steps to remediate any inaccuracies that are found in those reports as a result of the investigation). These violations directly implicate the purposes of the FCRA. "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer

privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). As courts have recognized, "the reporting of inaccurate information about [the plaintiff's] credit to a credit monitoring service—has a close relationship to the harm caused by the publication of defamatory information, which has long provided the basis for a lawsuit in English and American courts." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279-80 (11th Cir. 2017)(citing Restatement (First) of Torts § 569 cmt. g (Am. Law Inst. 1938)("explaining that it is 'actionable per se' to publish a false statement that another has 'refus[ed] to pay his debts'").

Therefore, the violations of §§ 1681i(a), 1681e(b) and § 1681s-2(b), standing alone, are sufficient to confer Article III standing because they directly implicate the purposes of the statute in the alleged inaccuracies at issue. *See Brown v. R&B Corp. of Va.*, 267 F. Supp. 3d 691, 701 (E.D. Va. 2017)("The Court is persuaded that the FDCPA language makes clear that Congress specifically intended that this procedural requirement—the prohibition against debt collectors inaccurately reporting disputed debt—would protect Plaintiff's substantive right in being free from abusive debt collection practices."). Under Fourth Circuit precedent, this is enough to confer Article III standing without any additional allegations of harm.

Defendant offers no authority for the proposition that a statutory violation implicating the purposes of the Act is insufficient to establish an injury-in-fact under Article III, other than citing to an out-of-circuit decision in *Artemov*. Perhaps Defendant is seeking to capitalize on the doctrinal split that has recently appeared in the Circuit Courts. *See e.g. Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, at *27-29 (11th Cir. 2020)(rejecting Article III standing where the plaintiff had alleged a violation of the Fair and Accurate Credit Transactions Act ("FACTA") based on an improperly truncated credit card number printed on a customer receipt, but no other harm flowing from that violation), *see also Trichell v. Midland Credit Mgmt.*, 964 F.3d 990,

1001-02 (11th Cir. 2020)(rejecting the plaintiff's alleged risk-of-harm based on a violation of the

Fair Debt Collection Practices Act ("FDCPA") without a showing that he was somehow

personally harmed by the violation, and noting, "We recognize that other circuits

disagree.")(citing *Macy v. GC Services Limited Partnership*, 897 F.3d 747 (6th Cir. 2018);

*Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 80-82 (2d Cir. 2018)(finding risk of

harm sufficient to confer Article III standing based on a statutory violation of the FDCPA, which

was designed to prevent misleading communications)).  Be that as it may, we are not in the

Seventh, D.C. or Eleventh Circuits.  *See Trichell*, 964 F.3d at 1002 ("In our view, the approach

of the Seventh and D.C. Circuits is more faithful to Article III.").  We are in the Fourth Circuit,

and that Circuit has stayed faithful to the notion that a statutory violation that goes to the very

purposes of the Act, unquestionably here, a reporting inaccuracy regarding an incorrect past-due

balance, is a showing of harm sufficient to withstand attack on Article III standing grounds.

To the extent that Defendant argues that the alleged violation is not actually inaccurate –

*see e.g.* Dkt. # 14-1, at 4-7 (arguing that the "written off" balance is different from the "overall

balance" and therefore that Plaintiff has not established an inaccuracy as a threshold matter) –

"'[t]he Supreme Court has also cautioned that the "absence of a valid … cause of action" does

not implicate the court's "power to adjudicate the case."'"  *Miller v. Dish Network, L.L.C.*, 326

F. Supp. 3d 51, 59 (E.D. Va. 2018)(quoting *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712,

716 (4th Cir. 2015)(citations omitted)).  "It is thus important to 'take care not to conflate a

standing inquiry with a merits inquiry.'"  *Miller*, 326 F. Supp. 3d at 59 (quoting *Beyond Sys.*, 777

F.3d at 716; also citing *Covenant Media of SC, LLC v. City of North Charleston*, 493 F.3d 421,

428-29 (4th Cir. 2007)); *see also Beyond Sys.*, 777 F.3d at 716 ("The Supreme Court has also

cautioned that the 'absence of a valid … cause of action' does not implicate the court's 'power to

adjudicate the case, and we therefore take care not to conflate a standing inquiry with a merits inquiry.")(quoting and citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)).  Therefore, it is unquestionably the case that the alleged violation is an inaccuracy for purposes of the standing analysis under Article III, and any arguments otherwise amount to an unmitigated attempt to overturn years of doctrinal precedent not only in the Fourth Circuit, but the U.S. Supreme Court as well.  Conflating the two principles may seem easy on its face, and no doubt one that Defendant would like to take, but cannot be accomplished under the U.S. Supreme Court's standing jurisprudence.

Additionally, to the extent that *Artemov* found the plaintiff lacked standing based on the assumption that the plaintiff would have been denied credit regardless of whether the past-due balance was reported as lower or higher than the overall balance, the court contained no mention of the rights-based standing that was found in *Cohen* and made no attempt to distinguish it.  *See Artemov v. TransUnion, LLC*, No. 20-cv-1892 (BMC), 2020 U.S. Dist. LEXIS 159267 at *16-17; *see also Cohen*, 897 F.3d 75, 81 ("We have held in the wake of *Spokeo*, albeit in non-binding summary orders, §§ 1692e and 1692g protect an individual's concrete interests, so that an alleged violation of these provisions satisfies the injury-in-fact requirement of Article III."). *Artemov* cannot be squared with the Second Circuit's doctrinal approach to Article III standing. *See Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 80-81 (2d Cir. 2017)(explaining that "[a] central inquiry, then, is whether the particular bare procedural violation may present a material risk of harm to the underlying concrete interest Congress sought to protect[,]" and noting, in the context of *Spokeo*, that "[g]iven the variety of ways a consumer reporting agency could run afoul of the FCRA, the Court recognized that while any given 'violation of one of the FCRA's procedural requirements may result in no harm,' '*Congress plainly sought to curb the*

17

*dissemination of false information by adopting procedures designed to decrease that risk.*'")(quoting *Spokeo*, 136 S. Ct. at 1550)(emphasis added).

The Second Circuit's recognition of substantive harms arising from statutory violations is identical to that of the Fourth Circuit. As established above, the statutory violation is enough because "Congress plainly sought to curb the dissemination of false information," *apropos* here, an inaccurate past-due balance. While the Fourth Circuit has not adopted the Second Circuit's standing analysis chapter and verse, even if it had, the question of the degree of risk to the underlying protectable interest identified by the Second Circuit in *Crupar-Weinmann*, *see* 861 F.3d at 80 ("Thus, the critical question for standing purposes is 'whether the particular procedural violations alleged in this case entail *a degree of risk* sufficient to meet the concreteness requirement.'")(quoting *Spokeo*, 136 S. Ct. at 1550)(emphasis in original), is readily answered. Defendant Experian has already "dissemin[ated] [] false information," so there is no need to engage in this additional layer of inquiry regarding the degree of risk to the underlying protectable interest. That interest has already been violated. The past-due balance is inaccurate, and Congress plainly sought to curb inaccurate reporting under the FCRA. *See Safeco*, 551 U.S. at 52 ("Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting…"); *see also Thomas*, 193 F. Supp. 3d at 633 ("Congress intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information and to maintain the confidentiality of consumer reports.").

There is simply no question that Plaintiff has established an injury-in-fact under Article III because each of the violations at issue under §§ 1681i(a), 1681e(b) and § 1681s-2(b) directly involve inaccuracies that go to the very heart of the FCRA, which was designed to prevent those inaccuracies. As such, no additional harm is necessary.

**ii.  Plaintiff's Alleged Harm Regarding a Lower Past Due Balance Creates a Risk of Harm to Plaintiff's Credit Because Only the Past-Due Balance Will Be Reported as a Declining Balance, Which Is Enough to Satisfy Article III Standing Requirements**

Although Plaintiff was not required to, Plaintiff has alleged an additional basis for Article III standing.  That is, reporting a lower past-due balance triggers Defendant furnisher's internal policies such that only the overall balance is reported as a declining balance as payments are made on the Account, resulting in a disparity in the two balances which makes it appear as though Plaintiff owes more than she actually does.  This is unquestionably harmful to her credit, and Defendant Experian cannot prove otherwise.

Courts in this jurisdiction have recognized three different categories of intangible injuries under an injury-in-fact analysis.  As discussed above, intangible injuries may constitute "real" harms.  *See Brown*, 267 F. Supp. 3d at 696 (citing cases).  "An intangible injury (1) may result in actual harm that produces an adverse effect on the plaintiff, … (2) may carry a 'risk of real harm' to a substantive right, … or (3) may present no real likelihood of an adverse effect…"  267 F. Supp. 3d at 696-97 (citations omitted).  The allegations at issue alleging a higher past-due balance are firmly in the first group of intangible injuries because Plaintiff has alleged that, due to the interplay of Toyota's internal policies, the only balance to be reported as declining once payments are made on the account is the "overall" or "written off" balance.  The past-due balance will remain untouched.

These are real-world harms that impact Plaintiff's credit, and courts have recognized that inaccurately reporting a debt confers Article III standing.  *Pedro*, 868 F.3d at 1278 (noting that "The gravamen of [the plaintiff's] complaint was that it was inaccurate to list her parents' credit card account on her credit report because it implied that she was liable on the account when she was not[,]" and finding that the plaintiff had standing); *see also Jugoz v. Experian Info. Sols., Inc.*, No. 16-cv-05687-MMC, 2017 U.S. Dist. LEXIS 97656, at *14, fn. 9 (N.D. Cal. June 23,

2017)("To the extent Wells Fargo argues Robles has alleged a 'bare procedural violation, divorced from any concrete harm,' and thus cannot 'satisfy the injury-in-fact requirement of Article III,' *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), the Court is not persuaded.")(citing *Mamisay v. Experian Info. Sols., Inc.*, No. 16-cv-05684-YGR, 2017 U.S. Dist. LEXIS 40793, at *8-9 (N.D. Cal. Mar. 21, 2017)(holding plaintiffs "alleged a sufficiently concrete injury for purposes of Article III standing"; finding inaccurate reporting of debt "constitutes the precise harm Congress sought to protect against in enacting the FCRA, and thus cannot be classified as a mere procedural violation")(as interpreted by *Jugoz*); *see also Artus v. Experian Info. Sols., Inc.*, No. 5:16-cv-03322-EJD, 2017 U.S. Dist. LEXIS 10718, at *2, *6 (N.D. Cal. Jan. 24, 2017)(based on the allegation that the defendant furnisher bank "was reporting [the plaintiff's] account 'owing both a balance of $253.00 and a past due balance of $253.00, despite a Bankruptcy Court Order stating that $0.00 is owed,'" the court finding that the plaintiff had Article III standing, and remarking in particular that "she has not merely alleged a 'bare procedural violation' but rather a harm the court finds sufficiently concrete based on Congress' intent in enacting the FCRA."); *see also Keller v. Experian Info. Sols., Inc.*, No. 16-CV-04643-LHK, 2017 U.S. Dist. LEXIS 5735, at *3, *10 (N.D. Cal. Jan. 13, 2017)(finding that the allegation that the plaintiff's account was being reported as "in collections, charged off, with a balance in the amount of $153,826.00 and $156,350.00 and with a past due balance in the amount of $29,278.00 and $32,676.00, despite the Court ordered treatment of its claim under the terms of Plaintiff's Chapter 13 plan of reorganization" was sufficient to confer Article III standing, and remarking, "Inaccurate reporting about whether Plaintiff has a debt and whether that debt is delinquent could harm a Plaintiff's credit and employment prospects.").

As the Ninth Circuit eloquently explained,

> We are not faced with a mere technical or procedural FCRA violation here. There may be a case where the nature of the inaccurate information is such that no risk of harm arises until the credit report information of all class members is actually disseminated to a third party, but this is not it. On the facts of this case, we hold that a real risk of harm arose when TransUnion prepared the inaccurate reports and made them readily available to third parties, and certainly once TransUnion sent the inaccurate information to the class members and some class members' reports were disseminated to third parties. This risk of harm was directly caused by TransUnion's failure to follow reasonable procedures to ensure maximum possible accuracy of its OFAC information, and an award of damages would redress the harm caused by the risk.

*Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1028-1029 (9th Cir. 2020).

The same is true here.  Reporting a lower balance was in fact inaccurate, and that inaccuracy created the real risk that Plaintiff's overall balance would be reported as higher when in fact it was coexistent with Plaintiff's past-due balance.  Due to the interplay of Toyota's internal policies (triggered by the reported lower past-due balance), only the past-due balance will be reported as declining once payments are made on the account.  Consistent with the decisions cited above, this makes it appear as though Plaintiff is liable for more than she actually owes.

### iii.  Plaintiff's Alleged Harm Regarding a Decreased Credit Score and Loss of Credit as a Result of the Violation of Metro 2 Guidelines is Sufficient to Establish Article III Standing

For substantially the same reasons, Plaintiff has also established standing with regard to her theory of liability under the Metro 2 Guidelines.  In particular here, Plaintiff has alleged a statutory violation that goes to the very purposes of the Act, which at least one court has held establishes standing based on an identical legal theory under the Metro 2 Guidelines.  Moreover, Plaintiff has alleged loss and denial of credit, and relatedly, a decreased credit score, as well as emotional distress arising from this specific violation.  All of these provide separate bases for Article III standing.

*Conrad v. Experian Info. Sols., Inc.*, No. 16-cv-04660 NC, 2017 U.S. Dist. LEXIS 68641 (N.D. Cal. May 4, 2017) held that the plaintiff had standing considering a number of different allegations regarding inaccurate reporting, one of which included Plaintiff's claim being examined here, that violation of the Metro 2 Guidelines disrupted the algorithms that calculate the debtor's credit score, resulting in a lower score. *Conrad*, No. 16-cv-04660 NC, 2017 U.S. Dist. LEXIS 68641 at *15-19. Recognizing that "not all inaccuracies [under the FCRA] cause harm or present any material risk of harm," the court was nonetheless persuaded that the plaintiff's "inaccuracy in reporting allegations are sufficient for the Court to find that an injury-in-fact." No. 16-cv-04660 NC, 2017 U.S. Dist. LEXIS 68641 at *19. The court found "rather extreme example used by the Supreme Court in *Spokeo* [regarding a debtor's zip code to be] instructive[,] and concluded that "[t]his case is clearly distinguishable, as it points out specific alleged shortcomings in Wells Fargo's reporting to the CRAs regarding Conrad's account with it." Id. at *19 (citing and relying on *Keller v. Experian Info. Sols., Inc.*, No. 16-cv-04643 LHK, 2017 U.S. Dist. LEXIS 5735, 2017 WL 130285, at *4 (N.D. Cal. Jan. 13, 2017); *accord Mamisay*, 2017 U.S. Dist. LEXIS 40793, 2017 WL 1065170, at *2).

Consistent with the cases cited above, *see supra* 19-20, inaccurate credit reporting establishes the kind of harm that was envisioned by Congress when it passed the FCRA. *See Safeco*, 551 U.S. at 52 ("Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting…"); *see also Thomas*, 193 F. Supp. 3d at 633 ("Congress intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information and to maintain the confidentiality of consumer reports.").

Once again, the Ninth Circuit's admonition is appropriate,

We are not faced with a mere technical or procedural FCRA violation here. There may be a case where the nature of the inaccurate information is such that no risk

> of harm arises until the credit report information of all class members is actually
> disseminated to a third party, but this is not it. On the facts of this case, we hold
> that a real risk of harm arose when TransUnion prepared the inaccurate reports
> and made them readily available to third parties, and certainly once TransUnion
> sent the inaccurate information to the class members and some class members'
> reports were disseminated to third parties. This risk of harm was directly caused
> by TransUnion's failure to follow reasonable procedures to ensure maximum
> possible accuracy of its OFAC information, and an award of damages would
> redress the harm caused by the risk.

*Ramirez*, 951 F.3d 1008, 1028-1029.  Thus, the legal claim here is not a "bare procedural

violation, divorced from any concrete harm," as Defendants would have it.  It is rather a

substantive violation that goes to the heart of the FCRA and the reasons it was passed, to

establish accurate credit reporting.  *See, e.g., Mamisay*, No. 16-cv-05684-YGR, 2017 U.S. Dist.

LEXIS 40793, at *8-9 (holding plaintiffs "alleged a sufficiently concrete injury for purposes of

Article III standing;" finding inaccurate reporting of debt "constitutes the precise harm Congress

sought to protect against in enacting the FCRA, and thus cannot be classified as a mere

procedural violation").

   In addition to this, however, Plaintiff has also alleged emotional distress, loss of credit

and credit denials (which includes, by implication, a decreased credit score), all of which the

courts have found to be sufficient to establish injury-in-fact under Article III.  *See Ben-Davies v.*

*Blibaum & Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017)(finding that the plaintiff had

satisfied the injury-in-fact requirement under Article III by alleging "actually existing intangible

harms that affect her personally: 'emotional distress, anger, and frustration.'"); *Green v.*

*RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229, at *22-23 (E.D. Va. Nov. 10,

2016)(finding that "a decrease in credit score may still establish an injury in fact sufficient to

confer standing")(citing cases); *see also Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 698

(N.D. Ill. 2016)("Credit scores are of great importance in our economy, and a depleted credit

score could affect a consumer in numerous ways, inflicting harm that often may be difficult to

prove or quantify. Congress has the power to discourage the needless depletion of consumers'
credit scores even when the depleted score cannot be neatly tied to a financial harm."); *see also*
*Sipe v. Equifax Info. Servs., LLC*, No. 3:16-6103, 2017 U.S. Dist. LEXIS 7938, at *16-17 (S.D.
W. Va. Jan. 20, 2017)("[The plaintiff] has alleged a concrete tangible harm in addition to
Nissan's alleged statutory violations. She claims as a result of Nissan's violations of the FCRA,
she has lost credit, lost the ability to purchase through the use of credit, and has been "denied her
fresh start" after bankruptcy.").

Plaintiff has made virtually identical allegations, all of which sustain separate findings of
injury-in-fact under Article III.  Indeed, as explained by *Sipe*, allegations of loss of credit and the
benefits of credit do not even venture into the realm of the theoretical, because they firmly
establish concrete, tangible harms.  Those harms are undeniable, even if the Court were to side
with Defendant on the issue of a statutory violation as providing a separate finding for standing.

*Artemov*, which Defendants heavily rely on, did not address these factual allegations as a
basis for Article III standing.  Moreover, its conclusion that the plaintiff could have suffered no
harm by the reporting of a lower past due balance was based on an imagined colloquy among
potential creditors, *see Artemov*, No. 20-cv-1892 (BMC), 2020 U.S. Dist. LEXIS 159267 at *16-
17, but as Plaintiff has pointed out, creditors will often never get to that point because "in a
world of big data, it is plausible that an algorithm designed to calculate [Plaintiff's] FICO score
based on the Metro 2 codes might not generate the same score" when the guidelines are not
followed, *see Cristobal*, No. 16-cv-06329-JST, 2017 U.S. Dist. LEXIS 63571 at *14.  *Artemov*
assumed a certain pragmatism in the review of a debtor's credit report which is simply not
justified in today's "big data" world.

**iv.  Plaintiff's Claim Should Not Be Dismissed on Ripeness Grounds Because the
Contours of Plaintiff's Claim Are Sufficiently Defined under Article III**

Defendant nevertheless argues (without citing to any of the governing standards), that this case is not ripe for decision. Defendant specifically argues that the case should be dismissed on ripeness grounds because there are no allegations that Plaintiff has actually made payments on the account, and therefore that the resultant harm to Plaintiff's credit flowing from the reported higher "overall" balance is too speculative. However, the contours of Plaintiff's claims, and the factual allegations underlying them, have been sufficiently defined for purposes of Article III.

"Like other justiciability doctrines, ripeness derives from Article III." *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 190 (4th Cir. 2018)(citation omitted). The ripeness doctrine addresses "the appropriate timing of judicial intervention," and "prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" *Deal*, 911 F.3d at 190 (quoting *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013); *Miller v. Brown*, 462 F.3d 312, 318-19 (4th Cir. 2006)(internal citation omitted)). In reviewing a ripeness challenge, a court should consider two factors: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." 911 F.3d at 191 (internal quotations and citations omitted).

Consistent with this doctrine, courts have only dismissed cases on ripeness grounds where it was impossible for the court to render a decision without knowing the precise contours of the claim at issue. In *Deal*, for example, the Fourth Circuit rejected a ripeness challenge to an Establishment Clause claim against a bible-study course offered in public schools where the defendant had argued that the plaintiff had offered no allegations that she would enroll her child in the program in the future. 911 F.3d at 191. The court rejected this argument, and found that ripeness would only have been an issue based on future challenges of the program where "the precise contours of a redesigned Bible instruction course are [un]known." *Id.* at 191. The fact

that the plaintiff had not included any allegation that she planned to reenroll her child in the new program did not prevent the court from considering violations based on the existing program. *Id.*

So it is here.  The fact that Plaintiff has failed to include any allegations of payments actually made on the account does not prevent the Court from considering whether, if she had, those payments would have resulted in a disparity in the reporting treatment between the overall balance and the past-due balance, as Plaintiff alleges.  The reported lower past-due balance and the disparity in treatment are like the Bible instruction course in *Deal* whose "precise contours … are known," and the fact of missing payments is like the missing allegation regarding reenrolling the plaintiff's child – essentially a tangential allegation that has no bearing on a proper framing of claim presented.  It is not impossible to render a decision based on these allegations.

The same result can be found in *Pak v. Unifund CCR Partners*, No. 7:13-CV-70-BR, 2014 U.S. Dist. LEXIS 7662 (E.D.N.C. Jan. 22, 2014).  There, the plaintiff filed suit against a debt collector under 15 U.S.C. § 1692e(5) under the FDCPA for threatening to take legal action against the debtor for a debt she didn't owe when the debt collector had no intention of ever filing suit.  *See Pak*, No. 7:13-CV-70-BR, 2014 U.S. Dist. LEXIS 7662 at *12.  The defendant argued that the case was not ripe for decision because it had not yet filed suit – but the court rejected this argument on the grounds that a violation of § 1692e(5) was made out regardless of suit had ever been filed and that "the possibility of a debt collector attempting to collect a debt that it does not actually own, either through assignment or otherwise, is very real."  No. 7:13-CV-70-BR, 2014 U.S. Dist. LEXIS 7662 at *12 (internal citations and quotations omitted).  Similarly, given the facts already averred, namely that the past-due balance will remain the same as payments are made on the account whereas the overall balance will be reported as declining,

facts which cannot be contested on a motion to dismiss, the risk that the past-due balance will be reported as higher than it actually is "is very real."

Defendant does not challenge ripeness on other grounds, namely, the statutory violation itself, or the violation of the Metro 2 Guidelines.  However, as already described, it would be futile to do so because the allegations firmly establish, respectively, that the Act has already been violated and that Metro 2 Guidelines have been violated in such a way as to lower Plaintiff's credit score and cause a loss of credit and credit denials. *See Deal*, 911 F.3d at 191.  There are no contingent future events that need to happen in order for the Court to render a decision.

## VI   <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety.


Dated:  January 19, 2020                                Respectfully Submitted,

                                                        **STEIN SAKS, PLLC**

                                                        <u>*/s/ Aryeh E. Stein*_____</u>

                                                        Aryeh E. Stein, Esq.

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Aryeh E. Stein*
Aryeh E. Stein, Esq.