## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **DEYSI ARRIAZA,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | |
| | | **CIVIL NO. 20-3073** |
| **EXPERIAN INFORMATION SOLUTIONS, INC.,** *et al.,* | * | |
| **Defendants.** | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## <u>MEMORANDUM</u>

This case arises from an allegedly misleading credit report.  Plaintiff Deysi Arriaza filed this lawsuit against Experian Information Solutions, Inc. ("Experian"), the company that published the allegedly misleading credit report (the "Experian report"), and Toyota Motor Credit Corporation ("TMCC"), the company that furnished the information underlying the Experian report.  (Compl., ECF No. 1.)  Arriaza alleges that both Defendants violated various provisions of the Fair Credit Reporting Act ("FCRA") by inaccurately portraying her debt with TMCC.  TMCC answered the Complaint, but Experian has moved to dismiss, alleging that Arriaza failed to state a claim and this Court lacks subject matter jurisdiction.  (Mot. Dismiss, ECF No. 14.)  Experian's Motion to Dismiss is fully briefed and no hearing is required.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons set forth below, the Court will grant Experian's Motion to Dismiss on the ground that Arriaza lacks standing to sue Experian.  Because this dismissal implicates the Court's subject matter jurisdiction, Arriaza is further ordered to show

1

cause as to why her claims against TMCC should not be similarly dismissed. *See* Fed. R. Civ. P. 12(h)(3).

## I.   *Background*[1]

Arriaza owes TMCC money. (Compl. ¶ 11.) Arriaza has owed TMCC that money for long enough that TMCC has decided to charge off (or equivalently, write off) that debt as no longer representing a plausible asset. (*Id.* ¶ 14.) At some point, TMCC furnished information to Experian regarding both Arriaza's debt and TMCC's decision to write off that debt. (*Id.* ¶ 11.) Based on this information, Experian published a credit report for Arriaza that included the TMCC debt and listed, among other things, three amounts: "Recent Balance: $7,035," "$10,068 written off[,]"and "$7,035 past due." (*See* Arriaza Credit Report at 3, Mot. Dismiss Ex. A, ECF No. 14-2.)

On February 24, 2020, Arriaza contacted Experian and indicated that she believed the reporting of her TMCC debt was inaccurate. (Compl. ¶ 17.) Experian passed on this information to TMCC, which investigated Arriaza's account—allegedly inadequately—and concluded that Arriaza's debt was being accurately reported. (*Id.* ¶ 19; *see also* Credit Report at 2 ("Outcome: Updated – The information you disputed has been verified as accurate.").)[2] In the same vein, Experian also allegedly failed to conduct a reasonable investigation into the dispute and continued to report the misleading information. (Compl. ¶¶ 24–25.) These combined failures led Experian to continue to publish the allegedly misleading information to third parties,

---

[1] The facts in this section are primarily taken from the Amended Complaint and construed in the light most favorable to Plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). The Court may "consider additional documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Here, the Court draws additional facts from Arriaza's credit report, as it is integral to the Complaint, and Arriaza does not dispute its authenticity.
[2] It appears that as a result of Arriaza's dispute, TMCC did update its credit report, increasing the amount that had been written off from $8,672 to $10,068. (Credit Report at 2–3.) Neither side argues that this modification is relevant at this juncture.

causing Arriaza various harms, such as "loss of credit, loss of ability to purchase and benefit

from credit, a chilling effect on applications for future credit, and the mental and emotional pain,

anguish, humiliation and embarrassment of credit denial." (*Id.* ¶ 28.)

## II.    *Legal Standard*

Defendants seek to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure.   Rule 12(b)(1) governs motions to dismiss for lack of

subject matter jurisdiction.   Under Rule 12(b)(1), a plaintiff bears the burden of proving, by a

preponderance of the evidence, the existence of subject matter jurisdiction.  *See Demetres v. E.*

*W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).   A challenge to a court's subject matter

jurisdiction may be either facial, in that the complaint fails to allege facts upon which subject

matter jurisdiction can be based, or factual, in that the jurisdictional allegations of the complaint

are not true.  *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).   In the case of a

facial challenge, the Court may grant a motion to dismiss for lack of subject matter jurisdiction

"where a claim fails to allege facts upon which the court may base jurisdiction."  *Davis v.*

*Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citations omitted).   In the case of a factual

challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not

apply, and the district court is entitled to decide disputed issues of fact with respect to subject

matter jurisdiction."  *Kerns*, 585 F.3d at 192.

In contrast, when "considering a motion to dismiss" pursuant to Rule 12(b)(6), the Court

must "accept as true all well-pleaded allegations and view the complaint in the light most

favorable to the plaintiff."  *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).   To

survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.   *Analysis*

Experian moves to dismiss on two grounds: (1) Arriaza lacks Article III standing to bring her FCRA claims, and (2) even if this Article III threshold was satisfied, Arriaza's pleadings fail to state a claim upon which relief can be granted. (*See* Mot. Dismiss Mem. Supp. at 7–8, ECF No. 14-1.) Experian also points out that various similar lawsuits have been brought—and routinely dismissed on both standing and merits grounds—primarily in the Southern and Eastern Districts of New York. *See*, e.g., *Artemov v. TransUnion, LLC*, Civ. No. BMC-20-1892, 2020 WL 5211068 (E.D.N.Y. Sept. 1, 2020). This Court agrees that Arriaza's claims against Experian should be dismissed. Because the Court dismisses these claims for lack of subject matter jurisdiction, it will not address the merits of Arriaza's claims. *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012) ("Subject matter jurisdiction defines a court's power to adjudicate cases or controversies—its adjudicative authority—and without it, a court can only decide that it does not have jurisdiction.").

### A.   *Standing*

The requirement of "standing is part and parcel of the constitutional mandate that the judicial power of the United States extends only to 'case' and 'controversies.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting U.S. Const. art III, § 2). This

"irreducible constitutional minimum . . . contains three elements: (1) the plaintiff must have suffered an injury-in-fact, which (2) must be causally connected to the conduct of [the defendant], and that (3) will likely be redressed if the plaintiff prevails." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (internal quotation marks omitted). Of these, injury-in-fact is the "first and foremost element of Article III standing" and requires a plaintiff to show "that she suffered an invasion of a legally protected interest—i.e., an injury— that is concrete and particularized." *Id.* (internal citation and quotation marks omitted). The requirements of establishing injury-in-fact not diminished "even in the context of a statutory violation," where a "bare procedural violation—divorced from any concrete harm or risk of real harm—cannot satisfy [ ] the injury-in-fact requirement." *Holland v. Consol Energy, Inc.*, 781 F. App'x 209, 213 (4th Cir. 2019) (internal quotation marks omitted).

Arriaza argues that she has standing based on two distinct injuries-in-fact. First, she argues that the inaccuracy in the Experian report is presently causing, or at least posing a risk of causing, harm to her credit score, as well as harms associated with a reduced credit score. (*See* Opp'n Mot. Dismiss at 18, ECF No. 19.) Second, she contends that this present inaccuracy "triggers Toyota's internal reporting policy where only the total balance is reported as a declining balance as payments are made on the debt," creating a risk of a future scenario in which TMCC (and consequently, Experian) will continue to inaccurately report a past-due balance despite Arriaza's having paid off the debt. (*See* Compl. ¶ 15.) Experian facially challenges both these theories of standing, arguing that even if all the facts in the Complaint are true, Arriaza has failed to establish standing. (*See* Reply at 15, ECF No. 22.) The Court agrees, finding that neither of these alleged injuries constitutes an injury-in-fact.

### *1. Jurisdictional Factfinding*

A preliminary issue that the parties dispute is how to properly interpret the $10,068 that was charged off on the Experian report. Arriaza contends that this number is the equivalent of the "overall balance" on the account. (Compl. ¶¶ 13–15.) Experian, in contrast, argues that this amount does not reflect Arriaza's substantive debt obligation (overall or otherwise) because charging off is merely a "business practice where a creditor writes off a debt and no longer considers the account balance an asset for accounting purposes." (Mot. Dismiss Mem. Supp. at 9 (quoting *Artemov*, 2020 WL 5211068, at *3).) This factual dispute is central to Arriaza's theory of harm, which depends on "the Metro 2 Guidelines, [requiring] creditors to equalize the past-due and total balance on a charged-off account." (Opp'n Mot. Dismiss at 18.)

While this Court is generally "entitled to decide disputed issues of fact with respect to subject matter jurisdiction," that entitlement is limited when those issues intersect with factual disputes that go to the merits of a plaintiff's claim. *See Kerns*, 585 F.3d at 192. Here, the dispute of whether the charged-off amount is the equivalent of the total balance also goes to the merits of Arriaza's FCRA claim. If Arriaza's premise is incorrect, she has not shown her report is inaccurate at all, much less inaccurate in a way that violates the FCRA. *See Alston v. Equifax Info. Servs., LLC*, Civ. No. TDC-13-1230, 2016 WL 5231708, at *10 (D. Md. Sep. 21, 2016) ("[T]o succeed on claims under [15 U.S.C. § 1681(a)], a plaintiff must make a threshold showing of inaccuracy."). Because the correct interpretation of the "charged off" amount creates a situation "where the jurisdictional facts are intertwined with the facts central to the merits of the dispute, a presumption of truthfulness should attach to the plaintiff's allegations." *Kerns*, 585 F.3d at 193 (internal quotation marks and citation omitted).

Under this more generous standard, the Court does not find that Arriaza's theory of equivalence is fundamentally implausible. While Experian is certainly correct as to what

6

charging off indicates, the object that is charged off is a debtor's account balance. Thus, while the amount "charged off" and the "total balance" are certainly not interchangeable terms, it is plausible that they are the same monetary amount, especially for an account that is so severely delinquent as to be charged off. *See Miss Jones LLC v. Arcello*, Civ. No. MKB-17-0895, 2018 WL 1525800, at \*2 n.1 (E.D.N.Y. Mar. 2, 2018) ("A charged off or written off debt is a debt that has become seriously delinquent, and the lender has given up on being paid."). However, although the Court will accept Arriaza's characterization of the "charged off" amount as being equivalent to the "total amount" owed to TMCC, she has still failed to establish an injury-in-fact.

### 2. *Present Harm*

Arriaza's first theory of injury is that the Experian report is presently inaccurate because "reporting a lower past due balance on a charged-off account violates the Metro 2 Guidelines." (Opp'n Mot. Dismiss at 9.) Although misreporting debt may violate the FCRA, Arriaza fails to show that this particular inaccuracy caused her "concrete harm or risk of real ham." *Holland*, 781 F. App'x at 213. Essentially, her argument is that Experian was required to increase her past-due balance to equal the amount "charged off" on the account—in other words, to report that she had *more* delinquent debt. Although Arriaza contends that underreporting her debt somehow *negatively* impacts her credit score, this allegation is "conclusory [and] devoid of any reference to actual events," and need not be credited, even at this stage in the proceedings. *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 874 (4th Cir. 2020). Other courts faced with this exact argument have rejected it as "peculiar," rightly concluding that "[i]t [is] simply implausible to think that a denial of credit was less likely to occur if creditors learned that the plaintiff had a higher past due balance." *Cohen v. Experian Info. Sols., Inc.*, Civ. No. BMC-20-3678, 2021 WL 413494, at \*2 (E.D.N.Y. Feb. 5, 2021) (quoting *Artemov*, 2020 WL 5211068, at

7

*5). Here, as in those cases, the pleadings fail to push this theory of harm "across the line from conceivable to plausible." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009).

Arriaza's rejoinder is that she can establish standing without a showing of harm because her claims establish a "substantive" violation of the FCRA. (Opp'n Mot. Dismiss at 19–20.) In support of this proposition, she relies on *Curtis v. Propel Property Tax Funding, LLC*, which held that a plaintiff can establish a concrete injury for purposes of Article III standing if he shows that "the harm he suffers as a result of a defendant's statutory violation is the 'type of harm Congress sought to prevent' when it enacted the statute." 915 F.3d 234, 240–41 (4th Cir. 2019) (quoting *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345–46 (4th Cir. 2017)). Other district courts have read *Curtis* as potentially supporting the view that, "in certain circumstances, a statutory violation that reaches the very purpose of the statute may constitute a substantive violation rather than a procedural violation." *Taylor v. Timepayment Corp.*, Civ. No. MHL-18-0378, 2019 WL 1449622, at *7 (E.D. Va. Mar. 31, 2019). These "substantive violations," according to Arriaza, avoid the bar on standing for bare procedural violations. *Holland*, 781 F. App'x at 213; (Opp'n Mot. Dismiss at 20 ("Critically [sic] here is the distinction between purely procedural violations, which may require additional allegations of harm outside the statutory violation at issue, and substantive violations which require no additional allegations of harm.").) Even under this view of standing, Arriaza has not established an injury-in-fact.

In enacting the FCRA, Congress did not intend to preclude all inaccuracies in credit reporting, but only those inaccuracies that are either "patently incorrect" or "misleading in such a way and to such an extent that [they] can be expected" to adversely affect credit decisions. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quoting *Sepulvado*

8

*v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998)) (internal quotation marks omitted). The inaccuracies here, which derive from purported deviations from the Metro 2 Guidelines, fall into the latter category. *See Nissou-Rabban v. Capital One Bank (USA), N.A.*, Civ. No. JLS-15-1675, 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) ("To prove her case [based on deviations from Metro 2], Plaintiff will likely need to establish through admissible evidence that this is in fact the industry standard, that [Defendant] deviated from it, and that this particular deviation *might adversely affect credit decisions*.") (emphasis added). For the same reasons discussed above, the alleged disparities in Arriaza's Experian report cannot be "expected to adversely affect credit decisions," as correcting them would further harm, not improve, her creditworthiness. *Dalton*, 257 F.3d at 415. Therefore, these alleged inaccuracies are not the "type of harm Congress intended to prevent" through the FCRA and cannot establish standing, even under the substantive-procedural distinction outlined in *Curtis*, 915 F.3d at 240–41. In sum, Arriaza fails to establish standing based on a present risk of harm, because even if the Court accepts her pleadings as true, she has "suffered no real harm, let alone the harm Congress sought to prevent in enacting the FCRA." *Dreher*, 856 F.3d at 346.

### 3. Future Harm

In addition to posing a present risk of harm, Arriaza also contends that the Experian report presents a future risk of harm based on "[TMCC's] internal policies whereby only the total balance is paid down as payments are made on the account, leaving the past-due balance remaining." (Opp'n Mot. Dismiss at 8.)[3] These policies, Arriaza claims, could one day lead TMCC and Experian to continue to report her debt with TMCC, even when that debt has been

---

[3] Later in her papers, Arriaza asserts the exact opposite—namely, that under "[TMCC's] internal policies (triggered by the reported lower past-due balance), only the *past-due balance* will be reported as declining once payments are made on the account." (Opp'n Mot. Dismiss at 28 (emphasis added).) Either theory suffers the same flaws with respect to establishing an injury-in-fact.

paid off. However, because that day is not today, and is not imminently approaching, it does not establish an injury-in-fact.

To establish an injury-in-fact, a plaintiff must show "an invasion of a legally protected interest that is concrete and particularized and *actual or imminent*, not conjectural or hypothetical." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (emphasis added) (internal quotation marks and citation omitted). The Fourth Circuit has routinely rejected claims of harm for lack of imminence when they are "too speculative" or based on an "attenuated chain" of future events. *See Buscemi v. Bell*, 964 F.3d 252, 260 (4th Cir. 2020) (too speculative); *Beck*, 848 F.3d at 275 (attenuated chain). Particularly relevant here, where future harms depend on a plaintiff's own actions, both the Fourth Circuit and the Supreme Court have repeatedly counseled that "some day intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Doe v. Obama*, 631 F.3d 157, 163 (4th Cir. 2011) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (emphasis in original)).

Here, all Arriaza contends is that she may, some day, pay off the debt she owes TMCC. And, when she does, TMCC and Experian may nonetheless continue to report that she owes them a debt. Without more concrete factual allegations as to how and when she will pay off that debt, as well as how TMCC and Experian will report (or better yet, are reporting) her declining balance, she has failed to establish that her future harm is sufficiently imminent for the purpose of establishing Article III standing.

### B.   This Court's Jurisdiction Over TMCC

Having concluded that neither of Arriaza's theories of harm establish an injury-in-fact, we must dismiss her claims against Experian for lack of standing. Although TMCC has not

10

moved to dismiss the Complaint, a lack of "standing implicates this court's subject matter jurisdiction." *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230 (4th Cir. 2008); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Therefore, Arriaza is ordered to show cause, within seven days, as to why this Court retains jurisdiction over her claims against TMCC. In doing so, she may identify any salient differences in those claims that would modify the analysis set forth above. *See Cohen*, 2021 WL 413494, at \*2 (ordering plaintiffs to show cause within seven days in identical circumstances).

Although this dismissal and the consequent show cause order are purely jurisdictional, Arriaza is advised to also consider the merits of her case before pressing forward against TMCC. Repeated decisions by other courts should place Arriaza's counsel on notice that the position they advance here has been described as "tak[ing] some nerve, [because t]he FCRA was enacted to remedy real abuses in credit reporting, not for imaginative attorneys to advance farfetched, if not absurd, interpretations of the statute on behalf of unharmed debtors." *Ostreicher v. Chase Bank, N.A.*, Civ. No. CS-19-8175, 2020 WL 6809059, at \*6 (S.D.N.Y. Nov. 19, 2020). Here, as there, the Court reminds counsel of Rule 11 and "cautions Plaintiff's counsel to review its claims carefully or [potentially] face such sanctions in the future." *Butnick v. Experian Info. Sols., Inc.*, Civ. No. PKC-20-1631, 2021 WL 395808, at \*5 n.8 (E.D.N.Y. Feb. 4, 2021).[4]

---

[4] Although this case is ostensibly brought by different counsel than those in a firm that has filed "multiple meritless FCRA suits, presumably in the hopes of scoring a quick settlement and attorney's fees," *Butnick*, 2021 WL 395808, at \*5 n.8, the Court notes that at least one of Plaintiff's papers affiliates counsel with that firm. (*See* Opp'n Mot. Dismiss at 27.)

### *IV.*    *Conclusion*

For the foregoing reasons, an order shall enter (1) granting Experian's Motion to Dismiss (ECF No. 14) and (2) requiring Arriaza to show cause, within seven days, as to why her claims against TMCC should not be dismissed for lack of subject matter jurisdiction.


DATED this 17 day of March, 2021.

BY THE COURT:

James K. Bredar

James K. Bredar

Chief Judge

12